UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

JOHN FISCUS,                          :
                                      :          Case No.: _____
             Plaintiff,               :
                                      :          **COMPLAINT**
       -against-                      :
                                      :          **DEMAND FOR JURY TRIAL**
WPX ENERGY, INC., RICHARD E.          :
MUNCRIEF, CLAY M. GASPAR,             :
KIMBERLY S. LUBEL, JOHN A. CARRIG,    :
KELT KINDICK, ROBERT K. HERDMAN,      :
VALERIE M. WILLIAMS, KARL F. KURZ,    :
D. MARTIN PHILLIPS, and DOUGLAS E.    :
SWANSON, JR.,                         :
                                      :
             Defendants.              :

-------------------------------------- X

Plaintiff, Insert Name ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against WPX Energy, Inc. ("WPX") and the members of WPX's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with WPX, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger between WPX and Devon Energy Corporation ("Devon") (the "Proposed Merger"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2.      On September 26, 2020, WPX and Devon entered into an Agreement and Plan of

Merger (the "Merger Agreement"), pursuant to which WPX shareholders will receive 0.5165 shares of Devon common stock for each share of WPX they own (the "Merger Consideration").

3.      On November 5, 2020, in order to solicit WPX shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for WPX, Devon, and the pro forma combined company; (ii) the valuation analyses performed by WPX's financial advisor, Citigroup Global Markets Inc. ("Citi"), in support of its fairness opinion; (iii) Citi's conflicts of interest; and (iv) the confidentiality agreements executed during the sales process.

5.      The special meeting of WPX shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of candor/disclosure.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to WPX's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, WPX's common stock trades on New York Stock Exchange, which is headquartered in this District, and WPX hired Citi and Georgeson LLC as advisors in connection with the Proposed Merger, both of which are also headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.    Plaintiff is, and at all relevant times has been, a shareholder of WPX.

12.    Defendant WPX is an oil and natural gas exploration and production company exploiting, developing and growing its oil positions in the Delaware Basin (a subset of the Permian Basin) in Texas and New Mexico and the Williston Basin in North Dakota. WPX's common stock trades on the NYSE under the ticker symbol "WPX".

13.    Individual Defendant Richard E. Muncrief is the Chairman of the Board and the Chief Executive Officer of WPX.

14.    Individual Defendant Clay M. Gaspar is, and has been at all relevant times, the President, Chief Operating Officer, and a director of WPX.

15.    Individual Defendant Kimberly S. Lubel is, and has been at all relevant times, a director of WPX.

16.    Individual Defendant John A. Carrig is, and has been at all relevant times, a director of WPX.

17.    Individual Defendant Kelt Kindick is, and has been at all relevant times, a director of WPX.

18.    Individual Defendant Robert K. Herdman is, and has been at all relevant times, a director of WPX.

19.    Individual Defendant Valerie M. Williams is, and has been at all relevant times, a director of WPX.

20.    Individual Defendant Karl F. Kurz is, and has been at all relevant times, a director of WPX.

21.    Individual Defendant D. Martin Phillips is, and has been at all relevant times, a

director of WPX.

22.     Individual Defendant Douglas E. Swanson, Jr is, and has been at all relevant times, a director of WPX.

23.     The Individual Defendants referred to in ¶¶ 13-22 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with WPX they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

24.      WPX, is an oil and natural gas exploration and production company. The Company is engaged in the exploitation and development of unconventional properties. It operates in the exploration and production segment of the oil and gas industry and its operations are conducted in the United States. It is focused on exploiting, developing and growing its oil positions in the Delaware Basin (a subset of the Permian Basin) in Texas and New Mexico and the Williston Basin in North Dakota. As of December 31, 2019, it operated 688 wells in the Delaware Basin and owned interests in 787 wells operated by others. As of December 31, 2019, it held approximately 122,000 acres in the Delaware Basin, with operations located in Eddy, Lea and Chaves Counties in New Mexico and Loving, Pecos, Reeves, Ward and Winkler Counties in Texas. Its activity in the Delaware Basin is focused on the Wolfcamp Shale formation, the Bone Spring interval and the Delaware sand interval.

25.     Devon is an independent energy company. The Company operates through its U.S. operating segment. Its U.S. operating segment is engaged exploration, development and production of oil, natural gas and natural gas liquids (NGL). The Company's operations are concentrated in various North American onshore areas in the United States. The Company's

operations are focused in four core oil producing areas: the Delaware Basin, Eagle Ford, STACK and Rockies Oil. The Company's Delaware Basin offers exploration and development opportunities from geologic reservoirs and play types, including the oil-rich Bone Spring, Wolfcamp and Leonard formations. The Company operates approximately 10 rigs in the asset. Its acreage in the Rockies Oil is focused on emerging oil opportunities in the Powder River Basin. Rockies Oil operates two rigs targeting the Turner, Parkman, Teapot and Niobrara formations in northern Converse County of the Powder River Basin.

26.     On September 28, 2020, WPX and Devon issued a joint press release announcing the Proposed Merger, which states in relevant part:

**Devon Energy and WPX Energy to Combine in Merger of Equals**

*Creating a Leading Energy Company Focused on Generating Free Cash Flow and Return of Capital to Shareholders*

- Merger of equals creates a leading unconventional oil producer in the U.S.

- Builds a dominant Delaware Basin acreage position totaling 400,000 net acres

- All-stock transaction accretive to per-share metrics in year one and maintains financial strength

- Expect to achieve cost savings that will drive $575 million of annual cash flow improvements by YE 2021

- Maintenance capital funding requirements in 2021 improve to $33 WTI and $2.75 Henry Hub pricing

- Enhanced operating scale accelerates transformation to a cash-return business model

- Combined company to implement "fixed plus variable" dividend strategy

TULSA, Okla. – Devon Energy ("Devon") (NYSE: DVN) and WPX Energy ("WPX") (NYSE: WPX) today announced they have entered into an agreement to combine in an all-stock merger of equals transaction.

The strategic combination will create a leading unconventional oil producer in the

U.S., with an asset base underpinned by a premium acreage position in the economic core of the Delaware Basin.

The combined company, which will be named Devon Energy, will benefit from enhanced scale, improved margins, higher free cash flow and the financial strength to accelerate the return of cash to shareholders through an industry-first "fixed plus variable" dividend strategy.

**TRANSACTION DETAILS**

Under the terms of the agreement, WPX shareholders will receive a fixed exchange ratio of 0.5165 shares of Devon common stock for each share of WPX common stock owned. The exchange ratio, together with closing prices for Devon and WPX on Sept. 25, 2020, results in an enterprise value for the combined entity of approximately $12 billion.

Upon completion of the transaction, Devon shareholders will own approximately 57 percent of the combined company and WPX shareholders will own approximately 43 percent of the combined company on a fully diluted basis.

The transaction, which is expected to close in the first quarter of 2021, has been unanimously approved by the boards of directors of both companies. Funds managed by EnCap Investments L.P. own approximately 27 percent of the outstanding shares of WPX and have entered into a support agreement to vote in favor of the transaction. The closing of the transaction is subject to customary closing conditions, including approvals by Devon and WPX shareholders.

**CEO COMMENTARY**

"This merger is a transformational event for Devon and WPX as we unite our complementary assets, operating capabilities and proven management teams to maximize our business in today's environment, while positioning our combined company to create value for years to come," said Dave Hager, Devon's president and CEO.

"Bringing together our asset bases will drive immediate synergies and enable the combined company to accelerate free cash flow growth and return of capital to shareholders. In addition to highly complementary assets, Devon and WPX have similar values, and a disciplined returns-oriented focus, reinforcing our belief that this is an ideal business combination," Hager added.

"This merger-of-equals strengthens our confidence that we will achieve all of our five-year targets outlined in late 2019," said Rick Muncrief, WPX's chairman and CEO.

"The combined company will be one of the largest unconventional energy producers in the U.S. and with our enhanced scale and strong financial position, we can now accomplish these objectives for shareholders more quickly and efficiently. We will create value for shareholders of both companies through the disciplined management of our combined assets and an unwavering focus on profitable, per-share growth," Muncrief added.

## STRATEGIC RATIONALE

- **Accelerates cash-return business model** – The merger accelerates Devon's transition to a business model that prioritizes free cash flow generation over production growth. With this highly disciplined strategy, management is committed to limiting reinvestment rates to approximately 70 to 80 percent of operating cash flow and restricting production growth to 5 percent or less annually. Free cash flow will be deployed toward higher dividends, debt reduction and opportunistic share repurchases.

- **Immediately accretive to financial metrics** – The transaction is expected to be immediately accretive to all relevant per-share metrics in the first year, including: earnings, cash flow, free cash flow, and net asset value, as well as accretive to return on invested capital. The combination is also expected to enhance the company's credit profile and decrease its overall cost of capital.

- **Maintains strong balance sheet and liquidity** – The all-stock transaction ensures the combined company will retain a strong balance sheet with a pro forma net debt-to-EBITDAX ratio of 1.6x on a trailing 12-month basis and is targeting a leverage ratio of approximately 1.0x over the longer term. The combined company will also have excellent liquidity with approximately $1.7 billion of cash on hand and $3 billion of undrawn capacity on its credit facility expected at closing.

- **Increases scale and diversification** – The transaction creates one of the largest unconventional oil producers in the U.S. with production of 277,000 barrels per day. The combined company will benefit from a premier multi-basin portfolio, headlined by the world-class acreage position in the Delaware Basin that is 400,000 net acres and accounts for nearly 60 percent of the combined company's total oil production. The Delaware Basin acreage is geographically diversified between southeast New Mexico and Texas, with only 35 percent of the leasehold on federal land. The consolidated Delaware footprint provides a multi-decade inventory of high-return opportunities at combined activity levels of 17 drilling rigs. The balance of the portfolio will be diversified across high-margin, high-return resource plays in the Anadarko Basin, Williston Basin, Eagle Ford Shale and Powder River Basin.

- **Drives significant cost synergies** – Cost savings from initiatives underway in the second half of 2020 and synergies resulting from the merger are expected

to drive $575 million in annual cash flow improvements by year-end 2021. These cost improvements are expected to be attained through operational efficiencies, general and administrative savings and reduced financing expense. The net present value of these cost synergies over the next 5 years equates to more than $2 billion of value. The all-stock transaction structure allows shareholders of both Devon and WPX to benefit from the cost synergies and significant upside potential of the combined company.

- **Supports implementation of a "fixed plus variable" dividend strategy** – With the business scaled to consistently generate free cash flow, Devon is initiating a new dividend strategy that pays a fixed dividend and evaluates a variable distribution on a quarterly basis. The fixed dividend is paid quarterly at a rate of $0.11 per share and the target payout is approximately 10 percent of operating cash flow. In addition to the fixed quarterly dividend, up to 50 percent of the remaining free cash flow on a quarterly basis will be distributed to shareholders through a variable distribution. This enhanced dividend strategy is effective immediately upon close of the transaction.

- **Shared commitment to ESG excellence** – Both Devon and WPX share an uncompromising commitment to ESG leadership, employee safety and environmental responsibility. Consistent with this commitment, the combined company will pursue measurable ESG targets, including methane intensity reduction, and will have progressive actions and practices in place to advance inclusion and diversity. Further, ESG metrics will be incorporated into the compensation structure and the board will monitor ESG goals and results.

- **Combines complementary cultures** – Devon and WPX share similar values and this combination is designed to optimize the strengths of both companies' operating philosophies to drive the continued growth and success of the business.

## LEADERSHIP AND HEADQUARTERS

Following the merger, the board of directors will consist of 12 members, 7 directors from Devon and 5 from WPX including the lead independent director. Dave Hager will be appointed executive chairman of the board, and Rick Muncrief will be named president and CEO.

The combined company's executive team will include Jeff Ritenour as executive vice president and chief financial officer, Clay Gaspar as executive vice president and chief operating officer, David Harris as executive vice president and chief corporate development officer, Dennis Cameron as executive vice president and general counsel, and Tana Cashion as senior vice president of human resources. The combined company will be headquartered in Oklahoma City.

## PRELIMINARY PRO FORMA 2021 OUTLOOK

Detailed forward-looking guidance for the full-year 2021 will be provided upon closing of the transaction. Based on current supply and demand dynamics, product inventory levels, and other leading economic indicators, the company expects to design capital activity plans to maintain base production.

The maintenance capital requirements to keep oil production flat in 2021 versus 2020 fourth-quarter exit rates of greater than 280,000 barrels per day is estimated at approximately $1.7 billion. Pro forma for cost synergies, these maintenance capital requirements in 2021 are estimated to be funded at $33 WTI and $2.75 Henry Hub pricing.

## II.    The Proxy Omits Material Information

27.      On November 5, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants had a duty to carefully review the Proxy before it was filed with the SEC and disseminated to WPX's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for WPX's shareholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Financial Projections

28.      First, the Proxy omits critical financial projections, including the net income projections and unlevered free cash flow projections for both WPX and Devon (together, the "Omitted Projections"). Defendants elected to summarize multiple sets of financial projections, but they excised and failed to disclose the readily available Omitted Projections. By disclosing certain projections in the Proxy and withholding the Omitted Projections, Defendants render the summary tables of projections on pages 89-90 of the Proxy materially incomplete and provide a misleading valuation picture of WPX and Devon.

29.      There are significant differences between cash flow projections—widely recognized as the most important valuation metric when it comes to valuing a company and its

stock—and the EBITDA projections that are included in the Proxy. EBITDA projection metrics are not sufficient analogs for cash flow projections. Well settled principles of corporate finance and valuation dictate that the value of companies and their stock should be premised upon the company's projected future cash flows, not projected EBITDA.[1] As Warren Buffet and other financial experts have stated: "References to EBITDA make us shudder. Too many investors focus on earnings before interest, taxes, depreciation, and amortization. That makes sense, only if you think capital expenditures are funded by the tooth fairy."[2] Relying solely on EBITDA to provide a fair summary of a company's financial prospects has numerous pitfalls. EBITDA does not take into account any capital expenditures, working capital requirements, current debt payments, taxes, or other fixed costs that are critical to understand a company's value.[3] As a result of these material differences between EBITDA and cash flows, experts recognize cash flows as a much more accurate measure when it comes to analyzing the expected performance of a company.

30.    In light of the significant differences between the Omitted Projections and the figures disclosed in the Proxy, the tables of projections on pages 89-90 of the Proxy are materially incomplete and misleading. By failing to include the Omitted Projections, the tables provide a materially incomplete and misleading overall valuation picture of WPX. Simply put, net income and cash flow projections are irreplaceable when it comes to fully and fairly understanding a company's projections and value.

31.    Second, in rendering its fairness opinion, Citi reviewed potential pro forma

---

[1]    Pratt, Shannon. "Net Cash Flow: The Preferred Measure of Return." Cost of Capital. 16. ("Occasionally, we find an analyst treating earnings before interest, taxes, depreciation, and amortization (EBITDA) as if it were free cash flow. This error is not a minor matter…").
[2]    Elizabeth MacDonald, *the Ebitda folly*, FORBES (March 17, 2003), http://www.forbes.com/global/2003/0317/024.html.
[3]    Cody Boyte, *Why EBITDA is Not Cash Flow*, AXIAL FORUM (Nov. 19, 2013), http://www.axial.net/forum/ebitda-cash-flow/

financial effects of the merger relative to WPX and Devon each on a standalone basis and the illustrative potential pro forma financial effect of the merger on WPX's and Devon's fiscal years 2021 and 2022 estimated CFPS and estimated free cash flow per share. Moreover, the synergies and accretive cash flows were two of the positive material factors identified by the Board in recommending shareholders vote in favor of the Proposed Merger. Yet no pro forma projections are provided to WPX shareholders, including the specific metrics for 2021 and 2022 analyzed by Citi, despite being touted by all the decisionmakers involved in the process. This information is critical to WPX shareholders as it speaks directly to the question being presented to them in deciding whether to vote in favor of the Proposed Merger: is the current ownership in standalone WPX worth more or less than a smaller stake in the combined entity. Accordingly, without this information, the statements made concerning the synergies and accretive cash flows are rendered misleadingly incomplete.

32.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Citi and the Board but have failed to disclose the Omitted Projections and the pro forma valuations. These omissions render the summary of the projection tables and each entity's financial picture in the Proxy misleadingly incomplete.

The Misleadingly Incomplete Summary of Citi's Fairness Opinion Valuation Analyses

33.     The Proxy describes Citi's fairness opinion and the various valuation analyses performed in support of their opinion.  Defendants concede the materiality of this information in citing Citi's fairness opinion and their valuation analyses among the "material" factors considered in recommending the Proposed Merger. Proxy at 74; *see also* Proxy at 80 ("The summary of the financial analyses described below under this heading "—Financial Analyses" is a summary of the material financial analyses reviewed with the WPX Board and performed by Citi in connection with Citi's opinion, dated September 26, 2020."). However, the summary of Citi's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, WPX shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citi's fairness opinion in determining whether to vote in favor of the Proposed Merger. *See* Proxy at 80 ("**Considering the data in the tables below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the financial analyses, could create a misleading or incomplete view of such financial analyses.**"). This omitted information, if disclosed, would significantly alter the total mix of information available to WPX's shareholders.

34.     In summarizing the *Selected Public Companies Analyses*, for each of WPX and Devon, the Proxy fails to disclose the individual multiple of each company utilized in the analyses. A fair summary of a comparable companies analysis requires the disclosure of the individual multiple for each company used in the analysis. Merely providing a quartile range of the multiples that a banker calculated without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low

multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of these analyses provided in the Proxy misleading.

35.     In summarizing the *Discounted Cash Flow Analysis* prepared by Citi for each of WPX and Devon, the Proxy fails to disclose the following key information: (i) the unlevered free cash flows used in each analysis; (ii) the net operating loss carryforwards for each company; (iii) the inputs and assumptions underlying the discount rate ranges (including CAPM components) for each company; and (iv) the terminal values calculated in each analysis.

36.     These key inputs are material to WPX shareholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

37.     Without the above-omitted information, particularly the cash flows, the WPX shareholders are misled as to the reasonableness or reliability of Citi's analysis, and unable to properly assess the fairness of the Proposed Merger.  As such, these material omissions render the summary of the *Discounted Cash Flow* Analyses included in the Proxy misleadingly incomplete.

The Misleadingly Incomplete Summary of Citi's Conflicts of Interest

38.     The Proxy fails to disclose any relationship that existed between Citi and Encap. As WPX's largest shareholders, Encap had interests that were different from or in addition to those of WPX common shareholders and had the ability to control and influence WPX's management and affairs. Accordingly, shareholders must be made aware of any relationship between the controlling shareholder and the financial advisor hired by the Company to represent the interest of all WPX shareholders.

39.     Disclosure of any relationship or compensation received or to be received as a result of the relationship between a financial advisor and the company it advises, or its related affiliates, is required pursuant to 17 C.F.R. § 229.1015(b)(4). Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its work or how much scrutiny to give the Proposed Merger. A reasonable shareholder would want to know what important economic motivations that the advisor might have, especially when those motivations could lead them to favor the interests of particular shareholders over others.

The Misleadingly Incomplete Summary of the Confidentiality Agreements

40.     The Proxy contains a misleadingly incomplete summary of the events leading up to the Proposed Merger that omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, they had an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

41.     The Proxy states that WPX executed a confidentiality agreement with Company A, but fails to disclose whether such agreement contained and standstill and/or "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect

42.     The express communication of the existence of such provisions is material to WPX shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal.  The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed confidentiality agreements could have made a superior proposal. However, if those confidentiality agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the description of the confidentiality agreements the Company entered into in the Background of the Merger section of the Proxy misleading.  Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

43.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

47.     The omission of information from a proxy will violate Section 14(a) if other SEC

regulations specifically require disclosure of the omitted information.

48.    Defendants have issued the Proxy with the intention of soliciting WPX's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for WPX, Devon, and the pro forma combined company; (ii) the valuation analyses performed by Citi in support of its fairness opinion; (iii) Citi's conflicts of interest; and (iv) the confidentiality agreements executed during the sales process.

49.    In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to WPX's shareholders although they could have done so without extraordinary effort.

50.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit shareholder consent; indeed, the Proxy states that Citi reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Citi, as well as their fairness opinion and the assumptions made and matters

considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Citi's analyses in connection with their receipt of the fairness opinion, question Citi as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as WPX's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of WPX's financial projections.

52.     WPX is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

53.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of WPX's

shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of WPX within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of WPX, and participation in and/or awareness of WPX's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of WPX, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of WPX, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly

involved in preparing this document.

58.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure**

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any

material information or contain any materially misleading statements.

64.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

65.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

66.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: November 13, 2020                    **MONTEVERDE & ASSOCIATES PC**

                                             _/s/ Juan E. Monteverde_
                                            Juan E. Monteverde (JM-8169)
                                            The Empire State Building
                                            350 Fifth Avenue, Suite 4405
                                            New York, NY 10118
                                            Tel: (212) 971-1341
                                            Fax: (212) 202-7880
                                            Email: jmonteverde@monteverdelaw.com

                                            _Attorneys for Plaintiff_

23